[No. 28473. Department One. October 18, 1941.]

JEAN DOUGLAS, *Appellant,* v. JOHN WILLIAM MACK, *Respondent.*[1]

[1]Reported in 118 P. (2d) 171.

*Arthur H. Hutchinson,* for appellant.

*The Attorney General* and *Harry L. Parr, Assistant* (*Melvin D. Lurie,* of counsel), for respondent.

MILLARD, J.—Defendant, a state deputy fisheries commissioner, arrested plaintiff about eight p. m., July 15, 1936, on the charge of illegal fishing in Telegraph Slough, a branch of Swinomish Slough, between Anacortes and Mount Vernon. Her fishing net and boat, which were seized by defendant, were left at the fishing float of plaintiff, at which time the partner of plaintiff, or the person who was with her when she was apprehended, was instructed by defendant not to permit any one to take the boat or net unless such person was authorized by defendant so to do. Plaintiff was placed in jail at Mount Vernon about nine miles from her float. On or about one p. m. the following day, she was released and the charge against her was thereafter dismissed.

On the theory that, after dismissal of the charge against her, defendant tendered to her a net sixty feet long instead of offering to return the net five hundred and seventy feet long seized at the time of her arrest, and that defendant tendered to her an unseaworthy boat in lieu of her fishing boat, which was in good condition at the time of its seizure, plaintiff instituted this action in January, 1940, to recover against defendant for loss of her fishing net and boat.

The cause was tried to the court, which found, in harmony with the answer, that defendant, while acting within the scope of his authority as a duly constituted deputy fish commissioner, arrested plaintiff July 15,

1936, for alleged illegal fishing; that defendant retained as evidence plaintiff's fishing boat and net seized at the time of her arrest; that, subsequent to plaintiff's release from custody, the same fishing net and fishing boat taken from plaintiff were tendered back to her, which tender was rejected; and that the property seized by the defendant was given reasonable and proper care under the circumstances. From the foregoing findings of fact, the court concluded that the action should be dismissed. Judgment was entered accordingly. Plaintiff appealed.

■ In seizing the fishing net and boat at the time he arrested appellant, respondent was acting within the scope of his authority as deputy fish commissioner; therefore, he is not personally liable for seizure of the evidence.

"Any member of the state game commission, the director of game, and all game protectors, and deputy game protectors, shall have the power and authority to seize without warrant . . . any . . . net . . . boat, light, fishing tackle or other device unlawfully used in . . . fishing. . . ." Laws of 1933, chapter 3, p. 24, § 25 (Rem. Rev. Stat. (Sup.), § 5876 [P. C. § 2607]).

Counsel for appellant correctly contends, however, that an officer who lawfully seizes property is responsible for the care of that property while in his custody, and that he may be required to respond in damages for injury resulting to that property by reason of his negligence.

Only questions of fact are presented: Did respondent offer to return to appellant the same net which he seized at the time he arrested her? Was appellant's boat damaged as a result of respondent's negligence?

■ There is ample evidence to sustain the trial court's findings of fact, hence the judgment of dismissal should be affirmed. It fairly appears that the net

and boat seized by respondent the night of July 15, 1936, were left at the float owned by appellant. At that time, her fishing companion or partner was directed to not permit any one to take the boat or net in the absence of authorization from respondent. Appellant was released from custody on or about one p. m., July 16, 1936. Vernon Moore, who was authorized by respondent so to do, went, about four a. m., July 17, 1936, to the appellant's float, where appellant's net and boat had been placed the night of July 15, 1936, when appellant was arrested, and took into custody the net and boat which are the subject matter of this controversy. No one was guarding the property. Appellant, who had returned from jail and was in her house, called from a window of the house, "What's going on out there?" Moore informed her that he was taking the boat and fishing equipment that had been seized by respondent.

The net was cleaned and stored at the fishing float of Moore at LaConner. The boat was stored in a loft and four or five inches of water was placed in the bottom of the boat to prevent the seams' opening. Some months later, following dismissal of charge against her of illegal fishing, an endeavor was made to return the same net and the same boat to appellant. The tender was rejected. At that time, the seams of the boat were open as a result of the evaporation of the water that had been placed in the bottom of the boat to prevent such condition. However, there is evidence, which the trial court believed, that, if the boat were again placed in the water, within a short time the seams would close and the boat would be in as good condition as when it was seized.

The judgment is affirmed.

ROBINSON, C. J., MAIN, STEINERT, and DRIVER, JJ., concur.